# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MARK PICART, CDCR #G-67811,<br><br>Plaintiff,<br><br>vs.<br><br>MARCUS POLLARD, Warden; ALEJANDRO R. GONZALEZ, Program Sergeant; SHADE WILLIAMS, Program Sergeant; RASHAD RAINEY, Correctional Officer,<br><br>Defendants. | Case No.: 25-cv-1846-AJB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS**<br><br>**(2) DISMISSING DEFENDANT POLLARD PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)(1)**<br><br>**AND**<br><br>**(3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON REMAINING DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)**<br><br>**(Doc. No. 2)** |

Plaintiff Stephen Mark Picart, proceeding *pro se* and currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, has filed a civil rights Complaint ("Compl.") pursuant to 42 U.S.C. § 1983 (Doc. No. 1), together with

a Motion to Proceed *In Forma Pauperis* ("IFP") (Doc. No. 2). Picart claims RJD prison officials used excessive force against him on July 25, 2023. (*See* Compl. at 3–5.)

For the reasons explained, the Court **GRANTS** Picart leave to proceed IFP, screens his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and **DISMISSES** Warden Pollard as a party because Picart fails to state a plausible claim for relief against him. Because Picart alleges plausible Eighth Amendment excessive force claims against Defendants Gonzalez, Williams, and Rainey, however, the Court **DIRECTS** the United States Marshal to effect service of process upon them pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).

## I.     IFP MOTION

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, . . . an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Here, Picart's IFP motion complies with both 28 U.S.C. § 1915(a)(1) and (2). In support, he has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Trust Account Statement Report (Doc. No. 3). *See also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. Picart's trust account statements show he maintained an average monthly balance of $72.25 in his prison trust account and had $15 in average monthly deposits credited over the 6-month period immediately preceding the filing of his Complaint. At the time of filing, however, Picart's available balance was only $1.36. (*See* Doc. No. 3 at 2, 3.)

Accordingly, the Court **GRANTS** Picart's Motion to Proceed IFP (Doc. No. 2) and assesses an initial partial filing fee of $14.45 pursuant to 28 U.S.C. § 1915(b)(1). But this initial fee need be collected only if sufficient funds are available in Picart's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal

3

judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II.     SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.     Standard of Review

Because Picart is a prisoner and proceeding IFP, his Complaint requires screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for dismissal for prisoner claims at screening is the 'same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.'" *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8(a) and 12(b)(6) together require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.[2]

---

[2] In determining whether a plaintiff has stated a plausible claim for relief, the Court may also consider exhibits attached and incorporated by reference to his Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a

Finally, while the court "ha[s] an obligation where the petitioner is pro se, particularly in a civil rights case, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Factual Allegations

While he was attending a computer class at RJD on July 25, 2023, Picart claims he was summoned to report to the Facility E Program Office. (*See* Compl. at 3 & Ex. A, Doc. No. 1-2 at 3.) There, Sergeant Gonzalez informed Picart he was being transferred to RJD's D Yard, but Picart refused, claiming the transfer would have a "detrimental impact on his rehabilitative goals." (Compl. at 4; Doc. No. 1-2 at 3.)[3] Gonzalez then ordered Picart to put his hands behind his back, Picart complied, and Gonzalez escorted him to a holding tank. (Doc. No. 1-2 at 3, 13.) After waiting several hours in the tank, Picart became lightheaded because he had not eaten lunch. (Compl. at 4.) Picart claims Gonzalez then "used his tactic to persuade [Picart] to go to his office for confidentiality." (*Id.*)[4]

After arriving in the Sergeant's Office, Picart alleges Gonzalez placed him in hand restraints. Picart then told Gonzalez he was lightheaded, and while still in hand restraints,

---

written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

[3] While Picart does not explain the proffered justification for the D Yard transfer in his Complaint, CDCR Rules Violation Report (RVR) Log No. 7330010, attached as an exhibit, indicates Picart's move was prompted by a need to "accommodate a vision impaired inmate." (*See* Ex. B, Doc. No. 1-2 at 13–14.)

[4] Picart does not provide any further explanation of the need for confidentiality, but RVR Log No. 7330010 refers to Picart's "previously alleged safety concerns" and the potential for an Administrative Segregation (Ad-Seg) housing assignment in lieu of D-Yard transfer. (*See* Doc. No. 1-2 at 13.)

alleges he reached for his walker so he could sit down.[5] (*Id.*) At this point, Picart alleges Gonzalez "said something and suddenly both Sergeants (A.R. Gonzalez and S. Williams) and C/O Rainey grabbed and slammed [him] to the floor." (*Id.* at 4.) Picart claims he was still cuffed at the time, "extremely dizzy," "seeing stars," and was "gasping for air due to [a] chemical agent (pepper spray) being activate[d] in a very close proximity." (*Id.*) Picart further alleges Gonzalez, Williams, and Rainey "would not let [him] get up from the pool of the chemical agent," and refused to permit him to "rise up and catch his breath" for approximately 2–3 minutes while they applied leg restraints for reasons he "do[es not] know," and before escorting him to be evaluated by a nurse. (*Id.* at 5; Doc. No. 1-2 at 4.)

Picart seeks injunctive relief preventing "reprisal and retribution" against him while the case is litigated, general damages in an amount the "court deem[s] appropriate," and $1 million in punitive damages based on claims that Defendants used "improper and unlawful" force in violation of the Eighth Amendment's prohibition of "cruel and unusual punishment." (Compl. at 3, 10.)

### C.  42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035–36 (9th Cir. 2015). Here, all Defendants are alleged to be RJD correctional officials acting in their official capacity as employees of the CDCR at the time Picart's claims

---

[5] Picart also does not explicitly allege he suffers from any mental health issues nor does he identify the nature of his physical disabilities requiring use of a walker, but he includes citation to the CDCR's Operations Manual provisions regulating "controlled use of force" situations and references portions requiring custody staff to employ de-escalation tactics and a "cooling off" period for inmates with "disabilities and/or mental health issues such that the use of chemical agent[s] or physical force would pose a particular risk to the prisoner." (*See* Compl. at 3, *citing* CDCR, Operations Manual, § 51020.12.)

accrued.[6] *See Naffe*, 789 F.3d at 1036 (explaining that a state employee generally acts under color of state law when the employee "wrongs someone while acting in his official capacity or while exercising his responsibilities pursuant to state law.") (citation and internal quotation marks omitted). Therefore, the Court next considers whether Picart has alleged facts sufficient to plausibly show a violation of his Eighth Amendment rights.

### D.   Individual Liability – Warden Marcus Pollard

With respect to Warden Pollard, Picart fails to state any plausible Eighth Amendment claim for relief because he fails to include "further factual enhancement" which describes how or whether Pollard was personally involved in the July 25, 2023, incident. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993). "Because vicarious liability is inapplicable to . . . § 1983 suits, [Picart] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even a *pro se* plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks*

---

[6] While Picart does not specify in his form Complaint that he seeks to sue any Defendant in his personal capacity (*see* Compl. at 2) where a plaintiff seeks damages against a state official, a personal capacity is presumed because an official-capacity suit for damages would be barred. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016); *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994) ("Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities."); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law."). To the extent Picart seeks damages against any of the named Defendants in their official capacities, however, those claims are dismissed as barred by the Eleventh Amendment. *See Mitchell*, 818 F.3d at 442 ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.").

*v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.").

Picart's Complaint offers no factual detail from which the Court might reasonably infer a plausible Eighth Amendment violation on the part of Warden Pollard. Instead, Picart simply includes Pollard in the caption, and identifies him as "the top management" responsible for "supervis[ing] the correctional officer[s] at [RJD]." (*See* Compl. at 2.) Supervisory officials like Pollard may be held liable under § 1983 only if Picart alleges his "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018); *see also Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011). Other than identifying Pollard as a supervisor, Picart includes no further factual allegations describing the Warden's involvement in the July 25, 2023, excessive force incident involving Defendants Gonzalez, Williams, and Rainey. Nor is there any reference to Warden Pollard in the exhibits Picart attached to his Complaint. Therefore, the Court **DISMISSES** Warden Marcus Pollard *sua sponte* based on Picart's failure to state a plausible Eighth Amendment claim against him. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### E. Eighth Amendment Excessive Force Claims

With respect to the Eighth Amendment excessive force claims alleged against Sergeants Gonzalez and Williams and Correctional Officer Rainey, however, the Court finds Picart's allegations sufficient to sufficient to survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

Unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For claims involving the alleged use of excessive physical force, the Court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted). Here, Picart alleges Gonzalez, Williams, and Rainey all "grabbed" him suddenly in the Program Sergeant's Office while he was already cuffed and "slammed" him to floor after Picart had already informed Gonzalez he was lightheaded. (*See* Compl. at 4.) Nothing in Picart's Complaint suggests a need to slam Picart to the ground, or the need to dispense pepper spray in an enclosed space against a cuffed, dizzy, and physically disabled prisoner either in order to maintain discipline or to ensure Picart's compliance with any order. *See Hudson*, 507 U.S. at 7; *cf. Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (noting that "[w]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'") (citation omitted). Instead, Picart's allegations are sufficient to plausibly suggest that Gonzalez, Williams, and Rainey's actions during the July 25, 2023 Program Office incident were excessive under the circumstances. *See Iqbal*, 556 U.S. at 678; *see also Kendall v. Galindo*, No. 23-CV-02709-HSG, 2023 WL 4372700, at *2 (N.D. Cal. July 6, 2023) (finding allegations that correctional officers "yanked" the arms and shoulders of a non-resistant prisoner already cuffed from behind, "dragged" him across the floor, and then repeatedly "slammed him face-first into the floor" after he requested to speak to a supervisor sufficient to state a cognizable Eighth Amendment claim of excessive force); *Mendiola v. King*, No. 2:23-CV-01512 DB P, 2024 WL 363622, at *2 (E.D. Cal. Jan. 31, 2024) (finding allegations of excessive force involving use of pepper spray against prisoner who alleged to have been battered and was attempting to comply with orders sufficient to survive initial screening under 28 U.S.C. § 1915A); *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1222 (9th Cir. 2022) (affirming denial of summary judgment where genuine dispute existed as to whether

prisoner was "beaten and bitten *after* he was handcuffed in violation of the Eighth Amendment") (emphasis added).

Thus, because the Court finds Picart's excessive force allegations against Defendants Gonzalez, Williams, and Rainey are "sufficient to warrant . . . an answer," *Wilhelm*, 680 F.3d at 1123, it will direct U.S. Marshal service on his behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

## III.  CONCLUSION

For the reasons discussed, the Court:

1.   **GRANTS** Picart's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a). (Doc. No. 2.)

2.   **ORDERS** the Secretary of the CDCR, or his designee, to collect from Picart's trust account the $14.45 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in his account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3.   **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.   **DISMISSES** Defendant Marcus Pollard **without prejudice** based on Picart's failure to state a claim against him pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1) and **DIRECTS** the Clerk of Court to terminate Pollard as a party to this action.

5.   **DIRECTS** the Clerk to issue a summons as to Picart's Complaint (Doc. No. 1) and forward it to him along with blank U.S. Marshal Form 285s for Defendants Alejandro R. Gonzalez, Shade Williams, and Rashad Rainey. In addition, the Clerk will

provide Picart with a certified copy of this Order, certified copies of his Complaint, and the summons so that he may serve these Defendants. Upon receipt of this "IFP Package," Picart must complete the Form 285s as completely and accurately as possible, *include a physical address where Defendants Gonzalez, Williams, and Rainey may be found and/or subject to service*, and return all these documents *to the United States Marshal* at the address provided by the Clerk and according to the instructions provided in the letter accompanying his IFP package.

6. **ORDERS** the U.S. Marshal, upon receipt of these documents from Picart, to serve a copy of the Complaint and summons upon Defendants Gonzalez, Williams, and Rainey at the addresses provided by Picart on the U.S. Marshal Form 285s, and to file executed waivers of personal service upon these Defendants with the Clerk of Court as soon as possible after their return. Should Defendants fail to return the U.S. Marshal's requests for waiver of personal service within 90 days, the U.S. Marshal must instead timely file the completed Form U.S. Marshal 285 Process Receipt and Returns with the Clerk of Court, include the date the summons, Complaint, and requests for waiver were mailed to each Defendant, and indicate why service was not completed. All costs of service will be advanced by the United States; however, if any Defendant located within the United States fails without good cause to sign and return the waivers requested by the Marshal on Picart's behalf, the Court will impose upon that Defendant any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

7. **ORDERS** Defendants Gonzalez, Williams, and Rainey, once served, to reply to Picart's Complaint, *and any subsequent pleading Picart may file in this matter in which they are named as parties*, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face of the

pleading alone that the plaintiff has a "reasonable opportunity to prevail on the merits," defendants are required to respond).

8. **ORDERS** Picart, after service has been completed by the U.S. Marshal, to serve upon Defendants Gonzalez, Williams, and Rainey, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Federal Rule of Civil Procedure 5(b). Picart must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon these Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated:  October 14, 2025

Hon. Anthony J. Battaglia
United States District Judge